UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| SURFCAST, INC., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 2:12-cv-333-JAW |
| | ) | |
| MICROSOFT CORPORATION, | ) | |
| | ) | |
| Defendant | ) | |

### ORDER ON DISCOVERY DISPUTE

The parties disagree as to whether a document identified as Exhibit 24 at the deposition of Klaus Lagermann held on June 27, 2013, is privileged and, if privileged, whether the privilege has been waived. On July 11, 2013, I conducted a telephonic hearing concerning the parties' dispute. Report of Hearing and Order re: Discovery Dispute (ECF No. 89). After hearing argument from both sides, I ordered the parties to submit simultaneous letter briefs and reply letter briefs. *Id*. at 2. With the benefit of oral argument and the post-hearing letter briefs, I conclude that the disputed document is privileged, but that the privilege has been waived.[1]

### I. Background

The document at issue was produced in discovery on February 27, 2013. The document produced is an e-mail that included the following "To" line: "'Tom Valence (E-mail)' tom@valencepartners.com, … ." Each page bore the following header: "Helen D'Alessandro - ***Ignore Previous Draft Shareholder Note***." The initial message ended with the following

---

[1] I deny Microsoft's motion for oral argument on this issue (ECF No. 98). This is a discovery dispute, which this court considers without the filing of a formal motion and its attendant procedures. Microsoft has already presented oral argument and pre-hearing and post-hearing letter briefs concerning the single document at issue. That is sufficient.

1

sentence: "I'd appreciate your views and lagal [sic] advice guys.  Thanks."  It was sent by Ovid Santoro, president of SurfCast.  The remainder of the e-mail appears to be a draft letter to SurfCast shareholders from Santoro.

This document was marked Exhibit 24 and used at the Lagermann deposition.  Lagermann, the inventor of the system that is the subject of the patent alleged in this action to have been infringed, was questioned for about 30 minutes about the e-mail and its contents.  No objection to its use was raised at that time.  Approximately three days after the deposition, counsel for SurfCast learned that the original e-mail read as follows on the "To" line: "'Tom Valence (E-mail)' tom@valencepartners.com, 'destefanop@PENNIE.COM (E-mail)' <destefanop@PENNIE.COM>, Tom Dechaene <Tom.Dechaene@surfcast.com>".

SurfCast describes Paul DeStefano as "one of SurfCast's outside attorneys," Letter dated July 18, 2013, from Benjamin S. Piper to Judge John H. Rich[ ] III ("SurfCast Letter"), at 1.  He also "acted as Surf[C]ast's Company Secretary and a member of its Advisory Board."  Letter dated July 18, 2013, from Joseph A. Micallef to Hon. John H. Rich III ("Microsoft Letter"), at 2.  Helen D'Alessandro is DeStefano's assistant.  *Id*.

Upon discovering the full list of addressees, SurfCast's attorneys sent a "clawback" letter dated July 2, 2013, to Microsoft's attorneys, asserting that Exhibit 24 was protected by the attorney-client privilege and had been produced inadvertently.  SurfCast Letter at 1-2.

## II.  Discussion

### A.  The Privilege

The party asserting the protection of the attorney-client privilege bears the burden of establishing its applicability.  *Vicor Corp. v. Vigilant Ins. Co.*, 674 F.3d 1, 17 (1st Cir. 2012).  "If

the privilege is established, the burden of proving any exception falls to its proponent." *Id*. The attorney-client privilege applies:

> (1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection [may] be waived.

*United States v. Schussel*, 291 Fed.Appx. 336, 343, 2008 WL 3983887, at *2, *6 (1st Cir. Aug. 29, 2008) (quoting *United States v. Massachusetts Inst. of Tech.*, 129 F.3d 681, 684 (1st Cir. 1997)).

Microsoft first contends that the text of the draft document included in the e-mail is not privileged because that document is not a communication between a client and its lawyer. Microsoft Letter at 3-4. It also argues that the entire e-mail is not privileged because SurfCast "has failed to show that Mr. DeStefano was acting as Surf[C]ast's attorney at the time[,]" and because SurfCast "cannot show that the primary purpose of the communication was to obtain legal advice." *Id*. at 5.

Microsoft cites two cases for the proposition that business documents sent to non-attorney officers or employees as well as attorneys are not automatically covered by the attorney-client privilege. *See Pacamor Bearings, Inc. v. Minebea Co.*, 918 F. Supp. 491, 511 (D.N.H. 1996); *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 402 (8th Cir. 1987). That general proposition is not the position taken by SurfCast with respect to Exhibit 24, however. Rather, SurfCast contends that Exhibit 24 was directed to Attorney DeStefano, not just copied to him, and it requested legal advice.[2]

---

[2] The fact that the e-mail misspells the word "legal" as "lagal" makes little difference. The request cannot reasonably be construed as one for anything other than legal advice.

3

This is the critical legal distinction recognized by most of the courts that have addressed this specific question. *See, e.g., Pacamor*, 918 F. Supp. at 511 (implied request for legal advice sufficient); *see also United Food & Commercial Works Union v. Chesapeake Energy Corp.*, No. CIV-09-1114-D, 2012 WL 2370637, at *10 (W.D. Okla. June 22, 2012); *United States v. KMPG LLP*, No. 02-0295 (TFH), 2003 WL 22336072, at *5 (D.D.C. Oct. 10, 2003) (e-mail addressed to legal counsel as well as others requesting comment sufficient to invoke attorney-client privilege for e-mail and accompanying draft document); *Roth v. Aon Corp.*, 254 F.R.D. 538, 539, 541 (N.D. Ill. 2009) (clawback upheld where e-mail requested thoughts of general counsel and others on attached draft); *Andritz Sprout-Bauer, Inc. v. Beazer East, Inc.*, 174 F.R.D. 609, 633 (M.D. Pa. 1997).

Similarly, asking for legal advice in the covering e-mail when only one of the individuals to whom it was sent is an attorney demonstrates that Santoro expected DeStefano to act as an attorney at the time. The fact that SurfCast did not include Exhibit 24 on its privilege log, which was produced before SurfCast's attorneys came to the realization that DeStefano had been an original addressee, does not demonstrate that "even Surf[C]ast did not believe Exhibit 24 was privileged[,]" contrary to Microsoft's contention, Microsoft Letter at 4. Nor does the fact that other documents dating from the same time period as Exhibit 24 that have been produced in discovery do not describe DeStefano as "counsel" or "attorney, " *id.* at 4-5, mean that Santoro was not requesting his legal advice in Exhibit 24, an argument that Microsoft makes without citation to authority.

Finally, Microsoft's contention that the fact that the e-mail was directed to others in addition to DeStefano renders it unprivileged, *id*. at 5, is based on a citation to the broad holding of a case, *United States v. International Bus. Mach. Corp.*, 66 F.R.D. 206, 213 (S.D.N.Y. 1974),

4

that has been rejected by subsequent opinions from other judges of the same federal district court. *See, e.g., Urban Box Office Network, Inc. v. Interfase Managers, L.P.*, No. 01 CIV. 8854(LTS)(THK), 2006 WL 1004472, at *5 (S.D.N.Y. Apr. 17, 2006); *In re Buspirone Antitrust Litig.*, 211 F.R.D. 249, 253 (S.D.N.Y. 2002). The later opinions are more persuasive.

I conclude, on the showing made, that the entire document is protected by the attorney-client privilege.

### B.  The Crime-Fraud Exception

Microsoft contends that the attorney-client privilege has been forfeited in this case because SurfCast sought the advice of DeStefano for the commission of fraud. Microsoft Letter at 5-7. This is so, it asserts, because the draft letter attached to the e-mail and directed to SurfCast shareholders "contains numerous intentional misstatements of fact that would have been material to the Surf[C]ast shareholders." *Id*. at 5. There is an exception to the attorney-client privilege where the communication to which the privilege would otherwise apply is made "for the purpose of getting advice for the commission of a fraud or crime." *United States v. Reeder*, 170 F.3d 93, 106 (1st Cir. 1999).

Lagermann's deposition testimony, the only evidence of "intentional misstatements of fact" proffered by Microsoft, Microsoft Letter at 6, expresses his opinion of his work for SurfCast, and that opinion differs from the characterizations of his work included in the draft letter to shareholders. This is not necessarily evidence of fraud, and certainly insufficient evidence of fraud to allow invocation of the crime-fraud exception. Nor does the fact that the letter ultimately sent to shareholders by Santoro did not include the assertions disputed by Lagermann prove that the draft was prepared with fraudulent intent; it could just as easily reflect a decision to avoid further conflict with Lagermann. Finally, neither the draft nor the letter

apparently later sent to shareholders indicates how SurfCast meant or expected the shareholders who received it to rely on its contents to their detriment, a necessary element of fraud. *See, e.g., Ergo Licensing, LLC v. Carefusion 303, Inc.*, 263 F.R.D. 40, 45 (D. Me. 2009).

Because "[t]he fraud element of the crime-fraud exception must be demonstrated by evidence such that the proposed factual basis must strike a prudent person as constituting a reasonable basis to suspect the perpetration or attempted perpetration of a fraud, and that the communications were in furtherance thereof[,]" *id.* at 46 (citation and internal punctuation omitted), the exception does not apply here.

### C. Waiver

SurfCast contends that Exhibit 24 was inadvertently produced and that it has not waived the attorney-client privilege that is otherwise applicable to the document. SurfCast Letter at 4-6. Its first argument in this regard essentially states that the terms of this court's standard confidentiality order, which was entered in this case, make waiver impossible whenever inadvertent production has occurred. *Id.* That argument expands the scope of the language of the confidentiality order too far.

The specific language to which SurfCast refers is the following:

> **15(a)--Identification of Inadvertently Produced Documents.**
> The inadvertent production of documents subject to the attorney-client privilege or the attorney work-product doctrine shall not waive the attorney-client privilege or attorney work-product protection. In addition, the fact that a document was inadvertently produced shall not be used in any manner as evidence in support of any such alleged waiver.

Consent Confidentiality Order (ECF No. 35) § 15(a).[3]

These statements cannot reasonably be read to establish that agreeing to the entry of this court's standard confidentiality order immunizes a party from any possible waiver of the

---

[3] *Cf.* Fed. R. Evid. 502(b).

6

protection of the attorney-client privilege under any and all circumstances. All that it establishes is that mere inadvertent production, standing alone, does not constitute a waiver.

Microsoft contends, as an initial matter, that Exhibit 24 was not inadvertently disclosed, because SurfCast did not take reasonable precautions to prevent its disclosure and because allowing SurfCast to "claw back" the document at this relatively late date would be unfairly prejudicial to Microsoft. Microsoft Letter at 7-8. The only authority it cites in support of this argument, *Figueras v. Puerto Rico Elec. Power Auth.*, 250 F.R.D. 94, 97-98 (D.P.R. 2008), deals with the overall question of waiver resulting from inadvertent disclosure, not whether the disclosure was inadvertent in the first place. I would not find it difficult to conclude that the disclosure was inadvertent in this case – it certainly was not deliberate – and, in any event, the language of the confidentiality order appears to take this element out of the waiver calculus.

Nonetheless, it is the failure of counsel for SurfCast to object to the use of Exhibit 24 at the Lagermann deposition that causes me concern. SurfCast says that

> Exhibit 24 came from hard-copy files and was produced early in the discovery period. By contrast, the original Santoro E-Mail comes from SurfCast's e-mail files. The production of e-mails began only in mid-June and production of Mr. Santoro's e[-]mails is only now under way. Accordingly, SurfCast's counsel was unaware of the original Santoro E-Mail when Microsoft's counsel used Exhibit 24 at the Lagermann deposition. The original e-mail came to light only *after* the Lagermann deposition, and SurfCast sent its clawback letter that same day.

Letter dated July 22, 2013, from Benjamin S. Piper to Judge John H. Rich[ ] III ("SurfCast Reply") at 3 (emphasis in original). This is not enough, however, in the circumstances presented here.

From all that appears, SurfCast and its attorneys decided to produce hard-copy responsive documents separately from and before reviewing and producing responsive e-mails. The lack of awareness by SurfCast's attorneys of the existence of the e-mail incarnation of the document

7

was, from all that appears, self-imposed.  In addition, and more importantly, the document that was produced seeks legal advice on its face; it indicates by an ellipsis that there were addressees in addition to the single name of a non-lawyer that appeared on the hard-copy version; and, it seeks "your views and l[e]gal advice guys[,]" a clear reference to multiple addressees.  Further, SurfCast has made no attempt to show that circumstances made it difficult or impossible for it or its attorneys to know that D'Alessandro, whose name appeared at the top of each page on the hard-copy version, worked for DeStefano, an attorney and an officer of SurfCast, and therefore the most likely individual to whom the request for legal advice would have been addressed.

These facts direct a conclusion that the privilege was waived by the close of the Lagermann deposition, if not before.  *See, e.g., Eden Isle Marine, Inc. v. United States,* 89 Fed.Cl. 480, 510-11 & n.35 (2009) (failure to raise privilege objection during deposition support waiver of privilege); *Luna Gaming-San Diego, LLC v. Dorsey & Whitney*, LLP, No. 06cv2804 BTM (WMc), 2010 WL 275083, at *5 (S.D. Cal. Jan. 13, 2010) (if privileged document is used at deposition and holder fails to object immediately, privilege is waived) (citing cases).  As was the case in *Crossroads Sys. (Texas), Inc. v. Dot Hill Sys. Corp.*, No. A-03-CA-754-SS, 2006 WL 1544621, at *2-*3 (W.D. Tex. May 31, 2006), the fact that Exhibit 24 was potentially privileged was evident from the face of the document itself, and, combined with the fact that the disclosing party allowed it to be used at a deposition without objection, resulted in a waiver of the privilege. *Id*

SurfCast's reliance on *Alcon Mfg., Ltd. v. Apotex, Inc.*, No. 1:06-cv-1642-RLY-TAB, 2008 WL 5070465 (S.D. Ind. Nov. 26, 2008), SurfCast Letter at 6, does not convince me that the court should hold otherwise.  In that case, the plaintiffs inadvertently produced a document containing handwritten notes of its vice president and corporate counsel.  *Id*. at *1-*2.  The

document was used at the deposition of an individual who did not recognize it, and later at the deposition of an in-house counsel for one of the plaintiffs, who testified that he had written a handwritten note in the middle of the document. At that point, the plaintiffs' attorney "indicated that this writing may be privileged and moved to strike this notation." *Id*. at *2.

Five days later, the plaintiff provided the defendant with a redacted copy of the document, which omitted both the note of the deponent and the handwritten note of the corporate counsel. *Id*. Instead, the defendant provided the unredacted document to its expert witness, who relied upon it in his report. *Id*. Observing that "it is well-established that by permitting a document to be used and marked as an exhibit at deposition, the disclosing party can waive all potential claims of privilege relating to that document[,]" *id*. at 3, the court held that, because the document was discussed at the deposition "for only a moment," because the plaintiff "asserted privilege of the document immediately upon discovering the inadvertent disclosure," and because the defendants had not yet relied upon the document at the time when the plaintiff asserted the privilege, the court found that the plaintiff's good-faith representation that the disclosure had been inadvertent and prompt remedial action meant that the privilege had not been waived. *Id*. at *5-*6.

Unlike the instant case, the *Alcon* opinion does not suggest that the document should have been recognized as privileged before it was produced, or in any event much earlier than it was so recognized. The unsigned handwritten note of the corporate counsel did not necessarily reveal itself to a reasonable observer as having been written by an attorney, much less one who had been asked for legal advice. Nor did the extent of questions asked at either deposition demonstrate any reliance upon the document by the defendant. These differences are significant.

### III.  Conclusion

For the foregoing reasons, I conclude that the attorney-client privilege had been waived as to Exhibit 24.

### *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

Date this 7th day of August, 2013.

        /s/  John H. Rich III
        John H. Rich III
        United States Magistrate Judge