UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| SURFCAST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:12-cv-00333-JAW |
| | ) | |
| MICROSOFT CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER VACATING THE MAGISTRATE JUDGE'S DISQUALIFICATION
OF DR. MARK ACKERMAN AS AN EXPERT WITNESS
FOR MICROSOFT CORPORATION**

In this patent infringement suit over U.S. Patent No. 6,724,403 (issued Apr. 20, 2004), SurfCast, Inc. (SurfCast) sought to preclude Microsoft Corporation (Microsoft) from using Dr. Mark Ackerman as a retained expert witness. The Magistrate Judge disqualified Dr. Ackerman on the ground that SurfCast established a confidential relationship with him in a single twenty-three minute telephone call one year before Microsoft retained him as an expert witness. Before the Court is Microsoft's objection to the Magistrate Judge's disqualification order. The Court, concluding that the legal standard for disqualification applied by the Magistrate Judge was too lenient to SurfCast, vacates the disqualification and remands for the Magistrate Judge to determine in the first instance whether SurfCast established a relationship with Dr. Ackerman sufficiently substantial to make disqualification an appropriate remedy.

## I. LEGAL STANDARD

When the Magistrate Judge issues an order on a non-dispositive matter, the Court reviews factual findings for clear error and legal findings de novo. *See PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010); CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, 12 FEDERAL PRACTICE AND PROCEDURE § 3069, at 350-56 (2d ed. 1997 & Supp. 2013).

> Because legal issues will often be entwined with factual issues that are in turn tinged with aspects of discretion, there should customarily be little question that a district judge retains authority to modify an unwarranted action by a magistrate judge even after assigning a matter to the magistrate judge for decision.

WRIGHT, MILLER & MARCUS, *supra*, at 355. "The decision to disqualify an expert is discretionary." *Thompson, I.G., L.L.C. v. Edgetech I.G., Inc.*, 11-12839, 2012 WL 3870563, at *2 (E.D. Mich. Sept. 6, 2012).

## II. FACTS

### A. Procedural Posture

On August 27, 2013, the Magistrate Judge presided over a hearing on certain discovery disputes between SurfCast and Microsoft. *Report of Hr'g and Order re: Disc. Disputes* (ECF No. 111). At that hearing, SurfCast objected to Microsoft's use of Dr. Ackerman as an expert witness. *Id.* at 2. The Magistrate Judge, over Microsoft's objection, ordered SurfCast to produce sworn statements from Attorney Pascal and Dr. Ackerman, as well as certain notes that the SurfCast attorneys took during their 2012 conversation with Dr. Ackerman. *Id.* The Magistrate Judge considered these documents in camera and ordered both parties to submit letter briefs on the disqualification issue. *Id.* The Magistrate Judge issued a

memorandum decision on September 30, 2013, disqualifying Dr. Ackerman as an expert witness for Microsoft. *Memorandum Decision on Mot. to Disqualify Expert Witness* (ECF No. 121) (*Mem. Dec.*).

Microsoft filed an objection to the Magistrate Judge's decision on October 10, 2013. *Def. Microsoft's Objection to Mem. Dec.* (ECF No. 128) (*Def.'s Objection*). With this objection, Microsoft submitted an affidavit by Dr. Ackerman describing his version of his communication with SurfCast. *Def.'s Objection* Attach. 1 *Decl. of Dr. Mark S. Ackerman* (ECF No. 128) (*Ackerman Decl.*). SurfCast replied to Microsoft's opposition on October 28, 2013. *Pl. Surfcast's Resp. to Def.'s Objection to Mem. Dec.* (ECF No. 134) (*Pl.'s Reply*). On October 30, 2013, Microsoft moved for leave to file a reply in support of its objection.[1] *Def. Microsoft's Mot. for Leave to File a Reply* (ECF No. 136) (*Def.'s Mot for Leave to File Reply*). SurfCast responded in opposition to this motion on October 31, 2013. *Pl.'s Objection to Def.'s Mot for Leave to File Reply* (ECF No. 137). The Court granted Microsoft's motion, *Order Granting Mot. for Leave to File Reply* (ECF No. 147), and Microsoft filed its reply on November 27, 2013. *Def.'s Reply in Support of Its Objection to Mem. Dec. to Disqualify Expert Witness* (ECF No. 148) (*Def.'s Reply*). SurfCast filed a sur-reply on December 11, 2013. *Pl.'s Sur-Reply to Def.'s Objection to Mem. Dec. to Disqualify Expert Witness* (ECF No. 149) (*Pl.'s Sur-Reply*).

---

[1] District of Maine Local Rule 72.1 does not permit a party objecting to the order of a Magistrate Judge to file a reply in response to the non-moving party's opposition brief. A party desiring to reply to an opposition brief must move the Court for leave to do so. D. ME. LOC. R. 72.1.

## B. Historical Facts

The Court adopts the Magistrate Judge's recital of the facts of this matter. Dr. Ackerman had only one substantive conversation with counsel for SurfCast, Erica Pascal, Esq., and Tiffany Miller, Esq. *Mem. Dec.* at 1. That conversation took place on August 29, 2013, and lasted twenty-three minutes. *Id.* Before that telephone conversation, on August 23 or 24, 2012, Attorney Pascal sent Dr. Ackerman via email a confidentiality agreement that she asked him to sign before they could engage in any specific discussion. *Id.* at 1-2. Dr. Ackerman signed the agreement and returned it to Attorney Pascal that same day. *Id.* at 2.

On August 29, 2012, Attorney Pascal emailed Dr. Ackerman the patent at issue in this action. *Id.* Approximately one-half hour later, the twenty-three minute call began. *Id.* Attorney Pascal and Dr. Ackerman discussed his background. *Id.* Beyond that, they differ in their recollections of the conversation. *Id.* They do agree that Dr. Ackerman was not paid, nor was he retained, by SurfCast. *Id.* It is undisputed that Dr. Ackerman was not asked to work on the case, to perform services in the future, or to decline to perform services for others. *Id.* There has been no further contact between Dr. Ackerman and any lawyer from Attorney Pascal's firm or from any other representative of SurfCast. *Id.*

Dr. Ackerman insists that during the August 29th phone call, Attorneys Pascal and Miller did not discuss litigation strategy or the strengths or weaknesses of either party's case. *Ackerman Decl.* ¶ 8. He further denies that the attorneys revealed any data about the case, suggested that any fact was of particular significance, or otherwise conveyed their views on the case. *Id.* He further asserts

4

that on August 22, 2013, attorneys for Microsoft, who had by that time retained him as an expert, informed him that they had learned of the non-disclosure agreement, and cautioned him not to disclose any confidential information or any details of his communications with Attorney Pascal's firm. *Id.* ¶ 11. Dr. Ackerman swears he has complied with the terms of the non-disclosure agreement. *Id.*

The Magistrate Judge performed an in camera review of the notes of Attorneys Pascal and Miller from their conversation with Dr. Ackerman, as well as a sworn declaration of Attorney Pascal. *Mem. Dec.* at 5-6. He concluded that Attorneys Pascal and Miller reasonably believed that they had established a confidential relationship with Dr. Ackerman and that they had in fact disclosed confidential information to him. *Id.* In addressing Microsoft's objection, this Court has not reviewed either the notes or the declaration.

## III. DISCUSSION

### A. Position of the Parties

#### 1. Microsoft

Microsoft advances three arguments as to why the Court should reverse the decision of the Magistrate Judge. First, it argues, the legal test for expert disqualification requires both a confidential relationship between the adversary attorney and the expert and that the adversary disclosed sufficient confidential information, relevant to the current litigation, to warrant disqualification. *Def.'s Objection* at 5 (citing *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1092 (N.D. Cal. 2004)). The first prong, Microsoft further argues, has two sub-parts: first, that it was reasonable to believe that a confidential relationship existed;

5

and, second, that the relationship "developed into a matter sufficiently substantial to make disqualification or some other judicial remedy appropriate." *Id.* (citing *Hewlett-Packard*, 330 F. Supp. 2d at 1093). Microsoft contends that the Magistrate Judge erred by failing to consider whether SurfCast's relationship with Dr. Ackerman was "sufficiently substantial" to warrant disqualification. *Id.* at 6.

Microsoft also contends that no "sufficiently substantial" relationship could be found on the facts of this matter. *Id.* This is so, it claims, because the telephone call was short, was substantially devoted to Dr. Ackerman's credentials and experience, and was not preceded by any relationship between SurfCast and Dr. Ackerman. *Id.* Furthermore, the only document they provided to Dr. Ackerman was a public patent. *Id.* at 6-7. In its view, the non-disclosure agreement is not sufficient, on its own, to find a sufficiently substantial relationship. *Id.* at 7.

Microsoft next contends that SurfCast has failed to demonstrate that it disclosed any confidential information to Dr. Ackerman. As a preliminary matter, Microsoft insists it was wrong for the Magistrate Judge to review the attorney's notes and their sworn explanations of those notes in camera; it views this as permitting ex parte argument. *Id.* at 8. Acknowledging that it is common to review privileged documents in camera to determine whether a privilege exists, Microsoft maintains that it is error to perform such review for the purpose of disqualifying the other side's expert; it characterizes this as "using the privilege as a sword and a shield." *Id.* at 8 n.3 (citing *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)).

6

Microsoft also contends that even the Magistrate Judge's findings based on the in camera review are improper because the Memorandum Decision does not show that SurfCast proved "*specific* and *unambiguous* disclosures that would be prejudicial." *Id.* at 9 (citing *Hewlett-Packard*, 330 F. Supp. 2d at 1097) (emphasis in Microsoft objection). It argues that the Memorandum Decision's reference to "several specific issues, both informational and strategic, that were discussed with Dr. Ackerman" and "litigation strategy and theories of recovery" are insufficient to meet this requirement. *Id.* (quoting *Mem. Dec.* at 6).

Finally, Microsoft advances a "public policy" argument, contending that it would be harmful to the "integrity of the legal process" to permit such a brief exchange between counsel and an expert to disqualify the expert from use by the other side. *Id.* at 10 (citing *Hewlett-Packard*, 330 F. Supp. 2d at 1098).

### 2. SurfCast

On the standard of review, SurfCast argues that the Court should only reverse the non-dispositive decision of a Magistrate Judge if it is "clearly erroneous or is contrary to law." *Pl.'s Reply* at 3 (quoting FED. R. CIV. P. 72(a) and citing *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 13-14 (1st Cir. 2010)). It further argues that "'[w]hen evidence gives rise to competing interpretations, the choice between them cannot be clearly erroneous.'" *Id.* (quoting *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 3 (1st Cir. 1999) (internal quotations omitted)). It characterizes the Magistrate Judge's decision to disqualify an expert as an exercise in discretion, entitled to "great deference" and reversible only for abuse of discretion. *Id.* (citing *Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery*, 177

7

F.R.D. 205, 213-14 (D.N.J. 1997)). It urges this Court to "'refrain from second guessing the magistrate on his pre-trial discovery rulings.'" *Id.* (quoting *Pub. Interest Res. Grp. v. Herclues, Inc.*, 830 F. Supp. 1525, 1547 (D.N.J. 1993)).

SurfCast agrees with Microsoft that it is legally correct to disqualify an expert when it was objectively reasonable for a party to believe it had a confidential relationship with the expert and the party disclosed confidential information to the expert. *Compare id.* at 4 *with Def.'s Objection* at 5. However, SurfCast disagrees with Microsoft's argument that *Hewlett-Packard* established a two-part sub-test for the existence of a confidential relationship. *Pl.'s Reply* at 4. They insist, instead, that *Hewlett-Packard* sets out a factors test, of which a "sufficiently substantial relationship" is but one factor. *Id.* at 4-6. SurfCast contends that the Magistrate Judge correctly applied the factors test, or at least that it was not clearly erroneous. *Id.*

SurfCast next defends the Magistrate Judge's finding that Attorneys Pascal and Miller disclosed confidential information to Dr. Ackerman. *Id.* at 6-7. Furthermore, it disputes Microsoft's contention that an in camera review of the notes and declaration was improper. *Id.* at 7-8. They view in camera review as necessary to preserve the confidentiality of their own disclosures, and a practice routinely employed by courts to decide whether to disqualify an expert. *Id.* at 7 (citing *Astrazeneca Pharm., LP v. Sandoz Inc.*, CIV.A. 07-1632JAP, 2008 WL 6582595 (D.N.J. Mar. 7, 2008); *Demouchette v. Dart*, 09 C 6016, 2012 WL 472917, at *3-4 (N.D. Ill. Feb. 10, 2012); and *Life Techs. Corp. v. Biosearch Techs., Inc.*, No. C-

8

12-00852, 2012 WL 1607410, at *7 (N.D. Cal. May 7, 2010)). It further argues that any more specific fact-finding by the Magistrate Judge on the nature of the confidential information would defeat the very purpose of confidentiality. *Id.* at 8.

SurfCast disputes Microsoft's characterization of the Magistrate Judge's review as using the privilege as both sword and shield. *Id.* It distinguishes *Bilzerian* as being about a criminal defendant using "a good faith defense for a securities action while attempting to shield the basis for his belief in the legality of his actions under attorney-client privilege." *Id.* at 8 (citing *Bilzerian*, 926 F.2d at 1292). It characterizes its own use of the privilege as "defensive," meant to "protect" SurfCast's "confidential attorney work-product information from disclosure to Microsoft." *Id.* They dispute that the issue is mooted by the parties' briefing for their *Markman* hearing. *Id.* at 9. Finally, they dispute Microsoft's public policy argument, contending instead that fundamental fairness weighs in favor of disqualification: "SurfCast would be greatly prejudiced if Microsoft were to proceed with Dr. Ackerman and gain access to SurfCast's confidential and attorney work-product information, whereas no meaningful prejudice will result to Microsoft." *Id.* at 10.

### 3. The Supplemental Reply and Sur-Reply

In reply, Microsoft makes three points. First, it argues that the Magistrate Judge committed an error of law by neglecting to make a finding that the relationship between SurfCast and Dr. Ackerman was "sufficiently substantial to justify disqualification." *Def.'s Reply* at 1. Second, Microsoft disputes that the Magistrate Judge's decision is reviewed under an abuse of discretion standard;

9

Microsoft argues instead of de novo review. *Id.* at 2 (citing *PowerShare*, 597 F.3d at 15. Third, Microsoft repeats and expands on its argument that SurfCast is attempting to use expert disqualification as a "sword," because SurfCast, not Microsoft, moved to disqualify Dr. Ackerman and then used "secret declarations and documents in support of that request." *Id.* at 3 (citing *Nationwide Payment Systems v. Plunkett*, 831 F. Supp. 2d 337, 338-40 (D. Me. 2011)). Microsoft vigorously objects to SurfCast's use of these "secret, self-serving declarations expounding on the contents of the[] notes." *Id.* at 4.

SurfCast, in sur-reply, disagrees that the "sufficiently substantial" analysis is required under *Hewlett-Packard*; it characterizes this analysis as just one factor in the overall inquiry, and insists that the Magistrate Judge did not commit error by failing to address it explicitly. *Pl.'s Sur-Reply* at 1. SurfCast repeats its earlier assertion that non-dispositive decisions by the magistrate judge should be reviewed under an abuse of discretion standard. *Id.* at 2. Finally, SurfCast disputes Microsoft's use of *Nationwide Payment Systems* to support its sword/shield theory, claiming that Microsoft has taken the case out of context. *Id.* at 3. SurfCast insists that in camera review of the notes was necessary to preserve its confidentiality. *Id.* at 4. It also clarifies, for the first time, that the "declaration" of Attorney Pascal "served to simply render the handwritten attorney work product notes taken during the conversation with Dr. Ackerman by DLA attorney Ms. Pascal into a typed format." *Id.*

B. Analysis

1. The Parties' Dispute Over the Standard of Review

Rule 72(a) requires the Court to "modify or set aside any part" of the Recommended Decision if it is "clearly erroneous or . . . contrary to law." The "clearly erroneous" standard applies to questions of fact; the "contrary to law" standard is functionally identical to de novo review, and applies to questions of law. *PowerShare*, 597 F.3d at 14-15. A magistrate judge is entitled to substantial discretion in his decisions regarding non-dispositive issues, but the district court retains the authority to review every such decision under the "clearly erroneous or . . . contrary to law" standard. WRIGHT, MILLER & MARCUS, *supra*, at 350-56. The legal standard to apply when a court is asked to disqualify an expert is an issue of pure law; the application of that standard to the facts of the case is a mixed question of fact and law. The Magistrate Judge's resolution of the mixed question in this non-dispositive matter would be entitled to deference even under the "contrary to law" standard of review, but the Court need not look past the pure question of law to rule on Microsoft's objection.

2. The Disqualification of Dr. Ackerman

The norms protected by disqualifying an expert who has been given confidential information by adversarial counsel are decidedly murky. If the Court disqualifies Dr. Ackerman, he can still be subpoenaed to testify for Microsoft. He can still consult with and advise counsel for Microsoft on the technical aspects of the case (within the limits of his non-disclosure agreement). SurfCast characterizes its motion to disqualify as being about protecting "confidential attorney work-product

11

information from disclosure to Microsoft," *Pl.'s Reply* 8, but disqualifying Dr. Ackerman as an expert witness will not protect any such information. The only result will be that Microsoft may not submit an expert opinion from Dr. Ackerman in its motion for summary judgment, and if Dr. Ackerman takes the stand he may not opine as an expert witness. SurfCast's twenty-three minute conversation with Dr. Ackerman implicates neither the scientific basis for his testimony nor whether his testimony will assist the trier of fact. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993).

The Ninth Circuit and at least a handful of district courts have nonetheless decided that disqualification is an appropriate remedy for disclosure of confidential information to an expert by adversarial counsel. *See Erickson v. Newmar Corp.*, 87 F.3d 298, 300 (9th Cir. 1996); *Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980); *Hewlett-Packard*, 330 F. Supp. 2d at 1092 (collecting cases). In *Campbell Indus.*, the Ninth Circuit stated that a district court has "broad discretion" to "exclude or admit expert testimony . . . and to exclude testimony of witnesses whose use at trial is in bad faith or would unfairly prejudice the other party." 619 F.2d at 27. In that case, the Ninth Circuit found no abuse of discretion where the district court disqualified an expert who had been improperly contacted by adversarial counsel in violation of Federal Rule of Civil Procedure 26(b)(4). *Id.* at 26-27. By contrast, the Ninth Circuit in *Erickson* noted the existence of a handful of cases in which district courts disqualified experts who had "switched sides" during the

course of litigation, but the appellate court did not reach the question on the facts before it. 87 F.3d at 300-01. Its acknowledgment of the practice is at best a dictum.

The district courts which have adopted this remedy typically phrase it as disqualification for a "conflict of interest." *E.g.*, *Hewlett-Packard*, 330 F. Supp. 2d at 1095; *Demouchette*, 2012 WL 472917, at *3. An expert witness, however, is not a lawyer; his or her role in the courtroom, notwithstanding receipt of payment by one side, is to explain difficult concepts to the fact-finder and opine on how the facts of the case fit into an analytic framework. However, the *Hewlett-Packard* Court described some policy considerations that support the disqualification of expert witnesses for certain kinds of contact with adversarial counsel, at different stages of the litigation process. These included protecting an expectation of confidentiality by the lawyers, *Hewlett-Packard*, 330 F. Supp. 2d at 1093-94; "protecting the integrity of the adversary process," *id.* at 1095; and "promoting public confidence in the legal system." *Id.* These are certainly commendable goals. *See, e.g., id.* at 1095 (discussing policy concerns).

Another consideration is the need for the courts to discourage counsel from engaging in potentially disqualifying conversations when there are a limited group of expert witnesses. The *Hewlett-Packard* Court explained this concern:

> [W]ithout speculating as to EMC's underlying motivations, the Court notes that if an expert could be disqualified on the facts of this case, parties in other cases might be tempted to create a purported conflict solely for the purpose of preventing their adversaries from using the services of a particular expert. This concern is especially important in high-technology patent infringement cases, in which the courts, as well as the public, rely on experts to explain complicated technologies. Permitting one party to lock up all or most of the best experts might interfere with the proper interpretation

of claim language—a[] task that potentially has preclusive effect with respect to future litigation—as well as fair evaluation of the merits of claims of infringement.

*Id.* at 1098. The difficulty is applying these principles to a specific case and determining whether the exclusion remedy promotes legitimate policy concerns.

The Court assumes that these policy goals may support, in some limited, egregious cases, disqualification of an expert who has "switched sides." This decision must be based on a weighing of fundamental fairness and prejudice to the other party, and will inevitably be fact-bound. To "protect[] the integrity of the adversary process," *Hewlett-Packard*, 330 F. Supp. 2d at 1095, or achieve fundamental fairness, the rule must be narrowly drawn and the party seeking exclusion must justify its application. The Court agrees that the basic factors outlined in *Hewlett-Packard* should guide the inquiry:

> First, has the moving party demonstrated that it was objectively reasonable for it to conclude that a confidential relationship existed between it and the expert? That is, did the confidential relationship develop into a matter sufficiently substantial to make disqualification or some other judicial remedy appropriate? Second, did the moving party disclose confidential information to the expert during such a confidential relationship that is relevant to the current litigation? Third, will the Court's decision be prejudicial or fundamentally unfair to either of the parties? Fourth, to what extent do the policies of allowing experts to pursue their trade, allowing parties to select their own experts, and preventing parties from creating conflicts solely for the purposes of preventing their adversary from using the services of the expert outweigh the policy of preventing conflicts implicated on the particular facts of the case? Finally, considering all of the above factors together, would disqualification of the expert promote the integrity of the legal process?

*Hewlett-Packard Co.*, 330 F. Supp. 2d at 1095-96.

The Court also agrees with Microsoft, however, that the first factor—whether it was objectively reasonable to conclude that a confidential relationship existed—must include an explicit finding that the relationship was "sufficiently substantial" to justify disqualification. A mere passing conversation in which counsel casually discusses thoughts and strategy should not disqualify an expert. *See, e.g.*, *Paul v. Rawlings Sporting Goods Co.*, 123 F.R.D. 271, 278 (S.D. Ohio 1988) ("[T]here may be situations where, despite the existence of a formal contractual relationship, so little of substance occurs during the course of the relationship that neither the integrity of the trial process, nor the interests of the party who retained the expert, would be served by blanket disqualification"). "[A] confidential relationship is not necessarily established just because some information concerning the litigation is shared." *Hewlett-Packard Co.*, 330 F. Supp. 2d 1094. Among other things, this criterion addresses the *Hewlett-Packard* Court's concern about the use of attorney or party consultations as a tactic to disqualify potential opposing experts.

Another consideration under this rubric is that Microsoft's use of an expert who has previously consulted, however briefly, with SurfCast, contains its own sanction. The facts surrounding the prior consultation, the implication that Microsoft's expert's favorable opinion is available to the highest bidder, and other similar issues would be fair questions on cross-examination and may affect the convincing power of his opinions. In this context, the exclusion of the expert may be a more draconian additional sanction than necessary. "The maxim of 'he who comes into equity must come with clean hands' of necessity gives wide range to a court's

15

use of 'discretion to withhold punishment of behavior which it considers not to warrant so severe a sanction.'" *Codex Corp. v. Milgo Elec. Corp.*, 717 F.2d 622, 633 (1st Cir. 1983) (quoting *Norton Co. v. Carborundum Co.*, 530 F.2d 435, 442 (1st Cir. 1976)).

The Court also agrees with Microsoft that disqualifying an expert on these grounds requires a finding of "specific and unambiguous disclosures that if revealed would prejudice the party." *Id.* Given this requirement, however, it will be necessary for the Magistrate Judge to review the evidence of confidential disclosure in camera. This will ensure that confidential information remains confidential and also make the proper legal determination. The Magistrate Judge was right not to disclose the allegedly confidential information in his Memorandum Decision, and it should not be disclosed on remand. The correct course is to review this information and make appropriate findings.[2]

### 3. Disposition

The law of expert disqualification in the District of Maine contemplates a standard more challenging for the movant than that applied by the Magistrate Judge. Thus, it is necessary to remand the case to the Magistrate Judge for reconsideration of the evidence in light of this standard.

---

[2] The Court cautions that any sworn declarations submitted by Attorneys Pascal and Miller must be non-argumentative and non-conclusory, tied to the historical facts of the conversation with Dr. Ackerman. Conclusions such as whether the conversation was "confidential" or "substantial" or otherwise "central to their case" are for the Magistrate Judge, not the affiants. On remand, the Magistrate Judge may wish to clarify whether the sworn declarations meet these criteria.

## IV. CONCLUSION

The Court VACATES the Memorandum Decision on Motion to Disqualify Expert Witness (ECF No. 121). It REMANDS the matter to the Magistrate Judge to consider (1) whether SurfCast established a sufficiently substantial relationship with Dr. Ackerman to justify disqualifying him as Microsoft's expert witness, and (2) whether attorneys Pascal and Miller made specific and unambiguous disclosures that would be prejudicial to SurfCast if Dr. Ackerman testified as an expert for Microsoft.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 7th day of March, 2014